```
              UNITED STATES DISTRICT COURT
           SOUTHERN DISTRICT OF WEST VIRGINIA

                         CHARLESTON
```

**GINO ANDREA WASHINGTON,**

  **Movant,**

**v.**            **CASE NO. 2:09-cr-00142**
              **CASE NO. 2:10-cv-01299**

**UNITED STATES OF AMERICA,**

  **Respondent.**

### PROPOSED FINDINGS AND RECOMMENDATION

  Pending before the court is Movant's Motion to Vacate, Set Aside and Correct Sentence pursuant to 28 U.S.C. § 2255 (docket # 48, "Motion").  By Standing Order (# 51), this action was referred to the undersigned for submission of proposed findings and recommendation for disposition.

  Movant, Gino Washington ("Defendant"), is serving a sentence of 37 months, upon his guilty plea to possession with intent to distribute a quantity of cocaine base, in violation of 21 U.S.C. § 841(a)(1), to be followed by a three-year term of supervised release.  (Amended Judgment in a Criminal Case entered November 10, 2009, # 42.)  He did not take a direct appeal.

  The § 2255 Motion was signed by Defendant on November 8, 2010, and filed with the Clerk on November 15, 2010.  Accordingly, Defendant's Motion was timely filed.

Facts of the Case and Procedural History

The facts are set forth in the Stipulation of Facts, attached to Defendant's plea agreement. It states as follows:

> 1. In May 2009, GINO ANDREA WASHINGTON asked a female companion to conceal quantities of illegal drugs inside her body and accompany him from their location in Ontario, Canada, to Kanawha County, West Virginia. The purpose of their trip to West Virginia was to sell the illegal drugs to make money.
>
> 2. On May 6, 2009, Mr. WASHINGTON sold and distributed a quantity of cocaine base, also known as "crack," to an informant for $100 in cash in Dunbar, Kanawha County, in the Southern District of West Virginia. That informant was working under the direction of detectives with the Metropolitan Drug Enforcement Network Team.

(Stipulation of Facts, # 31, at 8.)

Defendant was arrested, a criminal complaint was filed, and an initial appearance was held (## 1-5). After a preliminary hearing and detention hearing on May 14, 2009, probable cause was found and Defendant was detained (## 8-10). The grand jury indicted Defendant on June 3, 2009 (# 14). After discovery materials were provided, Defendant signed a plea agreement (# 31) and entered his guilty plea on August 17, 2009 (## 27-31).

Grounds for Relief

Defendant raises the following three grounds for relief:

A. Ground one: Ineffective assistance of counsel.

B. Ground two: Denial of right to appeal.

C. Ground three: Sentence imposed in excess of allowed by law.

(Motion, # 48, at 4.) Attached to his motion is a "Supplement," which elaborates on these grounds for relief.

    So the conclusion of the first part of <u>Strickland v. Washington</u>, the "deficiency prong" in the instant case is that the petitioner's attorney did fail to follow up upon a mild statement by the petitioner that maybe an appeal will be required. And also that the attorney failed to make a follow-up showing to ensure that the petitioner's sentence was what the petitioner did actually was suppose to receive.

* * *

    Accordingly, the petitioner went to be sentenced and this court said that the court was sentencing the petitioner to a 20:1 ratio. The petitioner was in the County Jail and had no access to law library or other law material. Upon arriving at FCI Elkton, and appearing at Unit Team, the petitioner requested to be allowed to review his PSR (PSI) and at that time the petitioner seen that he was charged with 239 kilos of marijuana for 11.95 grams of crack, which equates to 100:1 ratio, not the 20:1 that the court said they were sentencing the petitioner to.

    The petitioner's breakdown is as follows:
     1 gram of cocaine base = 20 Kg of marijuana
      1 gram of cocaine = 200 grams of marijuana
and when the math is done on these two, it is 100:1.

    Roughly, the 12 grams that the petitioner had was converted into 239 kilos of marijuana, the whole amount of marijuana attributed to the petitioner was 276.9 kilos of marijuana, 36.9 of which came from Oxycontin and the other 239.8 as the petitioner say earlier, was the conversion of 11.95 grams of crack into marijuana.

```
          11.95 grams of crack
          x 20
          239.7 of powder = level 20 =
             40<60 kilos marijuana
```

    The U.S.S.G. manual placed the petitioner at a sentencing range of 30-37 months, and the court sentenced the petitioner to a prison term of 37 months.

    That sentence is in error, for the court said that

3

> it was sentencing the petitioner to a 20:1 ratio and that is not the sentence that this petitioner received. For if the petitioner would have been sentenced to a 20:1 ratio then he would have started at a level 20 for crack – 47 kilos of marijuana plus 36.9 kilos for pills = 83.9 kilos of marijuana which = level 24 and the enhancement taking the petitioner to level 26 . . . from there the subtraction of the nine (9) levels for acceptance, safety valve, multi substance, and amendment 706 would have undoubtedly had the petitioner at level 17 and not the level 19 the court ended up with and the attorney did not check and protest.
>
> That level 17 and [criminal history category] I, place the petitioner at a sentencing range of 24-30 months . . . and that is what the basis of the ineffective assistance of counsel come into play. Along with the attorney talking the petitioner out of filing a notice of appeal when the petitioner felt that it would be a prudent thing to do so that option would be available in the event that there was some glitch discovered later. Such as it is now. * * *
>
> The petitioner do request that an evidentiary hearing be held to address his claims and that his case be remanded to the court for correction of sentence, for this petitioner is not challenging his conviction, only that his sentence needs to be corrected.

(# 48, at 10-13.)

Plea Agreement

The plea agreement, dated July 7, 2009, signed on July 17, 2009, and filed on August 17, 2009, contains the following provision:

> 10. **AGREEMENT ON SENTENCING GUIDELINES.** Based on the foregoing Stipulation of Facts, the United States and Mr. Washington agree that the following provisions of the United States Sentencing Guidelines apply to this case.
> USSG § 2d1.1
> Base offense level          24
>
> The United States asserts that a two-level enhancement for obstruction of justice is appropriate

4

>under USSG § 3C1.1.  However, Mr. Washington objects to the enhancement and preserves his right to oppose the enhancement at sentencing.
>
>The United States and Mr. Washington acknowledge and understand that the Court and the Probation Office are not bound by the parties' calculation of the United States Sentencing Guidelines set forth above and that the parties shall not have the right to withdraw from the plea agreement due to a disagreement with the Court's calculation of the appropriate guideline range.

(# 31, at 4.)

Presence Report

Defendant's Presentence Investigation Report ("PSR"), prepared on September 28, 2009 and revised on October 23, 2009, using the November 1, 2008 edition of the Guidelines Manual, computed relevant conduct as follows:

>7.  On May 6, 2009, members of the Metropolitan Drug Enforcement Network Team (MDENT) utilized a confidential informant (CI) to conduct a $100 controlled purchase of cocaine base from a black male referred to as "**Steve-O.**" An analysis of the cocaine base was conducted by the West Virginia State Police forensic laboratory and was determined to weigh .25 gram. * * *
>
>11. [Tiffany Wilson] provided a written statement regarding her involvement with Mr. Washington.  She said he asked her to accompany him to West Virginia and to conceal cocaine base and pills inside her vagina.  Wilson said this was her first trip to West Virginia, but the defendant had previously come to West Virginia to make some money by selling pills.  Wilson admitted that she still had the cocaine base and pills concealed and agreed to surrender those drugs.  While being observed by a female officer, Ms. Wilson removed a plastic bag from her vagina which contained cocaine base and OxyContin, 40 mg and 80 mg pills.  An analysis of the cocaine base was conducted by the West Virginia State Police forensic laboratory and was determined to weigh 11.7 grams.  An MDENT police report indicates Ms. Wilson was responsible for concealing 5.52 grams of OxyContin.

> 12. According to U.S.S.G. § 2D1.1, Application Note 10D, when more than one controlled substance is involved, the substances are converted to a marijuana equivalent, the quantities are added, and the combined total is used to determine the base offense level. In this case, the following calculations were used:
>
> a. 11.95 grams of cocaine base converts to **239 kg** of marijuana (11195 gm x 20 kg).
> b. 5.52 grams of OxyContin converts to **36.9 kg** of marijuana (5.52 gm x 6700 gm).
>
> 13. Therefore, the total amount of relevant conduct attributable to Mr. Washington is **275.9 kg of marijuana**.
>
> * * *
>
> 18. **Base Offense Level:** The guideline for a violation of 21 U.S.C. § 841(a)(1) is found at U.S.S.G. § 2D1.1. This offense involves at least 100 kg but less than 400 kg of marijuana, which establishes a base offense level of 26. U.S.S.G. § 2D1.1(c)(11). **26**

(PSR, # 41 [sealed], ¶¶ 7, 11-13, 18, at 5-7.) The PSR suggested a two level decrease for multiple substances, a two-level decrease for the safety valve, a two-level increase for obstruction of justice, and a three-level decrease for acceptance of responsibility, resulting in a Total Offense Level of 21. Id., ¶¶ 19-28, at 7.) Defendant's Criminal History Category was I. Id., ¶ 31, at 8.

The parties submitted sentencing memoranda. The government's memorandum did not take issue with the PSR's calculation of relevant conduct. (# 35, at 12.) The memorandum filed by defense counsel included an analysis of the guideline calculation using a 20:1 ratio:

> Some District Courts are determined to use a ratio

> of 20:1 in sentencing. Using the 20:1 ratio (1 gram of cocaine base = 4000 grams of marijuana) results in a marijuana equivalency of 47.8 kilograms of marijuana (11.95 grams x 4000 grams). The oxycodone conversion would remain the same at 36.9 kilograms of marijuana (5.52 x 6700). This would yield a total marijuana equivalency of 84.7 kilograms of marijuana, resulting in a base offense level of 24, which is then reduced by two levels [for multiple substances].

(# 36, at 5-6.)

<u>Sentencing Hearing</u>

By Order entered January 7, 2011 (# 52), the Court directed the United States to file a transcript of Defendant's sentencing hearing, which was done on January 21, 2011 (# 53). The United States was not required to file a response to the Motion.

The sentencing occurred on November 9, 2009. The presiding District Judge, the Hon. Joseph R. Goodwin, announced his calculation of the guidelines as follows:

> The relevant United States Sentencing Guideline needs to be calculated. We start with 2D1.1. Now, I use a 20:1 crack to powder cocaine ratio, and this offense involves the equivalent of at least 80 kilograms but less than 100 kilograms of marijuana.
>
> 2D1.1(c)(8) provides for a Base Offense Level of 24. The Base Offense Level is 24.
>
> There's a two-level decrease because there was involved more than one controlled substance. That makes it 22.

(Tr. Sent. Hrng, # 53, at 4.) He applied the two-level decrease for the safety valve (level 20), the two-level increase for obstruction of justice (level 22), and the three-level decrease for acceptance of responsibility, for a Total Offense Level of 19. <u>Id.</u>

at 5. With a Criminal History Category of I, the guideline range was 30 to 37 months. Id. After applying the factors set forth in 18 U.S.C. § 3553, Judge Goodwin imposed sentence at the top of the range, 37 months, and explained it as follows:

> The defendant came to this district from Michigan, apparently by way of Canada, for the sole purpose of selling drugs. Working out of a motel room in Nitro, the defendant sold quantities of narcotics to people in the community. Although he doesn't have any criminal history for which points attach, as noted, the Government mentions an 11-month sentence previously for distributing cocaine.
>
> * * *
>
> In any event, I've considered the need for this sentence to reflect the seriousness of the offense.
>
> * * *
>
> I've considered the need for the sentence to deter others, and hopefully that will work. The sentence will provide you with needed educational vocational training, medical care, and rehabilitation.
>
> You appear to have a strong drug dependency at some times. I will recommend the intensive drug treatment program. I hope you'll be able to get that. Your sentence is over 36 months, so I think that should happen. That also gives you certain advantages if you successfully complete it.

Id. at 9-11.

## ANALYSIS

Defendant's plea agreement includes the following provision:

> 11. **WAIVER OF APPEAL AND COLLATERAL ATTACK.** Both Mr. Washington and the United States may seek appellate review of a ruling by the District Court regarding the application of a two-level enhancement for obstruction of justice under USSG § 3C1.1 Nonetheless, Mr. Washington knowingly and voluntarily waives his right to seek

>appellate review of any sentence of imprisonment or fine imposed by the District Court, or the manner in which the sentence was determined, on any other ground whatsoever including any ground set forth in 18 U.S.C. § 3742, so long as that sentence of imprisonment or fine is below or within the Sentencing Guideline range corresponding to an adjusted offense level of 24, before consideration of acceptance of responsibility.  The United States also waives its right to seek appellate review of any sentence of imprisonment or fine imposed by the District Court, or the manner in which the sentence was determined, on any other ground whatsoever including any ground set forth in 18 U.S.C. § 3742, so long as that sentence of imprisonment or fine is within or above the Sentencing Guideline range corresponding to an adjusted offense level of 26, before consideration of acceptance of responsibility.
>
>Mr. Washington also knowingly and voluntarily waives the right to challenge his guilty plea and his conviction resulting from this plea agreement, and any sentence imposed for the conviction, in any collateral attack, including but not limited to a motion brought under 28 U.S.C. § 2255.
>
>The waivers noted above shall not apply to a post-conviction collateral attack or direct appeal based on a claim of ineffective assistance of counsel.

(# 31, at 4-5.)

When Defendant's arguments are compared with the calculation of his guideline range, the only difference between his contentions and the sentence imposed is his mention of Amendment 706 and his apparent belief that Amendment 706 would result in an additional two-level decrease in offense level.  Defendant is mistaken. Amendment 706 was effective November 1, 2007, and it was already incorporated into the guidelines before Defendant was sentenced. Defendant was not entitled to a Total Offense Level of 17, and there was no error in the calculation of his Total Offense Level.

The undersigned proposes that the presiding District Judge **FIND** that Defendant waived his right to a direct appeal of his sentence (which sentence is below or within the Sentencing Guideline range corresponding to an adjusted offense level of 24, before consideration of acceptance of responsibility), that his sentence was not greater than that allowed by law, and that he was not denied effective assistance of counsel.

It is respectfully **RECOMMENDED** that the presiding District Judge deny Defendant's § 2255 Motion.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), Rule 8(b) of the Rules Governing Proceedings in the United States District Courts Under Section 2255 of Title 28, United States Code, and Rule 45(c) of the Federal Rules of Criminal Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service), from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of <u>de</u> <u>novo</u> review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. <u>Snyder v. Ridenour</u>, 889 F.2d 1363 (4th Cir. 1989); <u>Thomas v. Arn</u>, 474 U.S. 140 (1985); <u>Wright v. Collins</u>, 766 F.2d 841 (4th Cir. 1985); <u>United States v. Schronce</u>, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be served on opposing parties and Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation, to mail a copy of the same to Movant and to transmit it to counsel of record.

<u>January 27, 2011</u>
     Date

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge